JOHN R. FIELDING, JR.,
California Bar No. 108303
402 W. Broadway, Suite 1700
San Diego, California 92101
Telephone: (619) 233-0467
jfieldingattyatlaw@yahoo.com

Attorney for Defendant:
FAJARDO-HERNANDEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE MARILYN L. HUFF)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 3:07-cr-02973-H |
| Plaintiff, ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |
| vs. ) ) | |
| JUAN CARLOS FAJARDO-HERNANDEZ, ) ) | |
| Defendant ) | |

## STATEMENT OF THE CASE

On October 31, 2007, Defendant, Juan Carlos FAJARDO-HERNANDEZ ("Mr. Fajardo-Hernandez"), was indicted on one count of 8 U.S.C. § 1326 (a) and (b).  At his arraignment on November 5, 2007, the undersigned, John R. Fielding, Jr., was added as attorney of record, and Mr. Fajardo-Hernandez pled not guilty.  On December 10, 2007, the government was ordered to provide the audio tapes of Mr. Fajardo-Hernandez' prior deportation proceeding and his "A-file." The Motion Hearing/Trial Setting date is set for April 21, 2008 before the Honorable Marilyn L. Huff.

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS INDICTMENT
- 1

## **STATEMENT OF FACTS**

On October 21, 2002, Mr. Fajardo-Hernandez appeared at a removal proceeding before an Immigration Judge ("IJ").  (See Exhibit One, "Order of the Immigration Judge," dated October 21, 2002).  This was his first, and to this date, only such appearance before an IJ.  Mr. Fajardo-Hernandez refused counsel.  (See Exhibit 2, "Certified Copy of the Transcript of Court Hearing" ("Transcript") at page 1: lines 13 and 19 ).  The IJ sought to confirm the facts set out in the "Notice to Appear."  (See Exhibit Three, "Notice to Appear").

- Mr. Fajardo-Hernandez entered the U.S. "without an inspection" in 1978;
- He became a lawful permanent resident on May 9, 1989;
- He was convicted of P.C. 273.6 (violating a protective order) on July 22, 2002;
- P.C. 273.6 was a deportable offense pursuant to § 237(a)(2)(E)(ii) of the Immigration and Nationality Act (violating a protective order renders one deportable)
(Transcript, 1:23-28; and 2:1-10).

Mr. Fajardo-Hernandez admitted the conviction as well as serving sixty days in jail as punishment for it (though the correct number appears to be thirty, discussed *infra*).  (Transcript, 2:11-16, 23-24).  He informed the IJ that his daughters, wife, brothers, sister, dad, cousins, aunts and uncles reside in the United States.  (Transcript, 3:3-8).

At the conclusion of the brief hearing, the following colloquy took place:

| | |
|---|---|
| Court: | Now Mr. Fajardo, it seems to me that you are deportable on this domestic violence charge of deport ability [sic.], but you could apply for this cancellation of proceedings as a long-time immigrant.  I explained all of that to Mr. Mario.  You, did hear that explanation? [sic.] |
| Fajardo: | Yes I did sir. |
| Court: | Any questions about that? |
| Fajardo: | No sir. |
| Court: | Do you want to apply? |
| Fajardo: | No I don't. |
| Court: | Remember, if you don't apply now, if your chance to apply expires, you can't apply later.  Is, do you understand? [sic.] |
| Fajardo: | Yes sir. |
| Court: | Do you want to apply? |
| Fajardo: | No I don't sir. |
| Court: | You're going to accept deportation back to Mexico, is that correct sir? |
| Fajardo: | Yes sir. |
| Court: | All right sir, thank you very much.  Return to your seat please. [End of hearing].  (Transcript, 3:11-28). |

The IJ never advised Mr. Fajardo-Hernandez about his apparent eligibility for voluntary departure.

According to Immigration and Naturalization Service ("INS") Form I-831 dated April 11, 2007, Mr. Fajardo-Hernandez' criminal history at the time he was brought before the IJ on October 21, 2002 consisted of the following:

| DATE: | VIOLATION: | SENTENCE: |
|---|---|---|
| 1995 | P.C. § 71 | 36 month probation |
| 1999 | | Probation reinstated; 123 days jail |
| 2002 | P.C. § 417 (a) | 3 year probation; 30 days jail |
| 2002 | P.C. § 273.6(a) | 3 years probation; 30 days jail |

(See Exhibit Four, "Form I-831")

Because Mr. Fajardo-Hernandez was not linked to terrorist activities or sentenced to serve a term of imprisonment of at least one year as an aggravated felon, he was presumptively eligible for voluntary departure. The IJ, however, did not explain what this meant or how to request it. It does not appear on the record that the IJ actually considered it. Hours later, Mr. Fajardo-Hernandez was removed from the U.S. (See Exhibit Five, "Removal Verification Form," dated October 21, 2002)

According to Mr. Fajardo-Hernandez' A-File, the INS has reinstated the Removal Order of October 21, 2002 four times. (See Exhibit Six, "Reinstatements of October 21, 2002 Removal Orders") The most recent reinstatement occurred on April 11, 2007. On November 9, 2004, Mr. Fajardo-Hernandez was convicted of P.C. § 273.5, an aggravated felony, and he was sentenced to a prison term of 2 years. (See Exhibit Seven, "Form I-851"). Mr. Fajardo-Hernandez was never brought before an IJ, and he was removed on November 14, 2005.

## APPLICABLE LAW

### I. THE INDICTMENT IS INSUFFICIENT AND CONSTITUTIONALLY DEFECTIVE BECAUSE IT FAILS TO ALLEGE A VOLUNTARY ENTRY INTO THE UNITED STATES WHICH IS AN ELEMENT OF THE § 1326 CHARGE

The indictment fails to state an offense under 8 U.S.C. § 1326. It merely alleges that Mr. Fajardo-Hernandez "was *found* in the United States." (See Exhibit Eight, "Indictment,"

emphasis added). Being "found" by the government does not, by itself, involve any volitional conduct on the part of the defendant. *United States v. Salazar-Robles*, 207 F.3d 648, 650 (9th Cir., 2000).

The indictment fails to allege a voluntary entry into the United States, an element of a 1326 charge. *United States v. Quintana-Torres*, 235 F.3d 1197 (9th Cir., 2000). In *Quintana-Torres*, the Ninth Circuit held that a voluntary entry "is an element of [§ 1326] and, as such, must be proved beyond a reasonable doubt by the prosecution." *Id*. at 1200.

Where an indictment fails to recite an essential element of the charged offense, the indictment must be dismissed. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir., 1999); cited by *U.S. v. Omer*, 429 F.3d 835 (9th Cir., 2005).

> [A]n indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment. *Du Bo*, 186 F.3d at 1179.

The fact that the voluntary entry element is not contained in the statutory language makes no difference: "implied, necessary elements, not present in the statutory language, must be included in an indictment" *Id*. (internal quotations and citation omitted); accords with, *Pettibone v. U.S.*, 148 U.S. 197, 202 (1893) (". . .material facts and circumstances embraced in the definition of the offense must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication.")

The indictment is also deficient for failure to allege inspection and admission by an immigration officer or actual and intentional evasion of inspection at the nearest inspection point. See, e.g., *Nyrienda v. I.N.S.*, 279 F.3d 620 (8th Cir., 2002) (setting forth the components of an entry under the immigration law). Section 1326 employs the definition of entry developed by the Board of Immigration Appeals. *U.S. v. Pacheco-Medina*, 212 F.3d at 1162 (9th Cir., 2000). While *Pacheco-Medina* focused primarily on the "official restraint" requirement of the concept of "entry" under the immigration law, the Immigration law definition actually contains three separate components: (1) a crossing into the territorial limits of the United States; (2)(a)

inspection and admission by an immigration officer, or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint. *Nyrienda*, 279 F.3d at 623.

As noted above, the indictment alleges only that Mr. Fajardo-Hernandez was "found" in the United States. Assuming, arguendo, that this allegation satisfies the requirement that the individual "cross[] into the territorial limits of the United States," *Nyrienda*, 279 F.3d at 623, it fails to allege the second two components: "inspection and admission by an immigration officer, or. . . actual and intentional evasion of inspection at the nearest inspection point; and. . . freedom from official restraint." In short, the indictment is plainly deficient, and it should be dismissed.

## II. THE INDICTMENT SHOULD BE DISMISSED BECAUSE MR. FAJARDO-HERNANDEZ' DEPORTATION ORDER OF OCTOBER 21, 2002 WAS INVALID SINCE THE IMMIGRATION JUDGE FAILED TO ADVISE MR. FAJARDO-HERNANDEZ THAT HE WAS ELIGIBLE FOR A VOLUNTARY DEPARTURE

A defendant charged with illegal reentry after removal under 8 U.S.C. § 1326 may collaterally attack a removal order. A deportation based on an invalid order can not serve as an element of 8 U.S.C. § 1326. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987).

To challenge the validity of a prior deportation order, under § 1326(d) a defendant must demonstrate: (1) exhaustion of administrative remedies; (2) improper deprivation of judicial review; and (3) prejudice. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203-04 (9th Cir., 2004); see also *U.S. v. Basulto-Pulido*, 219 Fed.Appx. 717, 718 (9th Cir., 2007), unpublished, but citation permitted per U.S. Ct. Of App. 9th Cir. Rules 32.1 and 36-3, 28 U.S.C.A.

The exhaustion requirement in § 1326(d)(1) will not bar collateral review of a deportation proceeding when the waiver of an administrative appeal was invalid. *Muro-Inclan*, 249 F.3d 1180, 1183 (citing *United States v. Garza-Sanchez*, 217 F.3d 806, 808 (9th Cir., 2000)). A waiver of the right to appeal a removal order entered by an immigration judge ("IJ") to the Board of Immigration Appeals ("BIA") is invalid when the waiver was not "considered and intelligent." *Muro-Inclan*, 249 F.3d at 1182.

> A waiver is not considered and intelligent when the record contains an inference that the [person] is eligible for relief from

> deportation, but the IJ fails to advise the [person] of this
> possibility and give him the opportunity to develop the issue.
> *U.S. v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir., 2005).

Where an individual is eligible for relief from deportation, an IJ must apprise him of his eligibility or the proceeding violates his due process rights. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir., 2004); see also *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir., 2003) ("The duty of the IJ to inform an [individual] of his eligibility for relief is mandatory, and the failure to do so constitutes a violation of the [person's] due process rights.").

      Mr. Fajardo-Hernandez appeared before an IJ on October 21, 2002. Although he was eligible to apply for pre-hearing voluntary departure, pursuant to 8 U.S.C. § 1229c(a)(1), the IJ neglected to inform Mr. Fajardo-Hernandez of this relief. The IJ did not explain what pre-hearing voluntary departure was, nor did the IJ provide him with an opportunity to apply for it. When Mr. Fajardo-Hernandez waived his right to apply for a "cancellation of proceedings," his hearing was over. Consequently, Mr. Fajardo-Hernandez' waiver of his right to appeal the deportation order was not considered and intelligent, and was therefore invalid. The exhaustion and deprivation requirements in § 1326(d) are therefore satisfied. See also, *Ortiz-Lopez*, 385 F.3d at 1204.

      To satisfy the final requirement, prejudice, Mr. Fajardo-Hernandez must show only "that he had a plausible ground for relief from deportation." *Ubaldo-Figueroa*, 364 F.3d at 1050 (internal quotation marks omitted). If an individual is not an aggravated felon or a terrorist, he is eligible for voluntary departure at his own expense. 8 U.S.C.A. § 1229c(a)(1); see also, Corpus Juris Secundum, Aliens § 1368, "Eligibility."

> In the context of a deportation proceeding, prejudice occurs
> when an [individual's] rights are violated in a manner so as
> potentially to affect the outcome of the proceedings. Here,
> the IJ's failure to inform and allow a meaningful opportunity
> to apply for pre-hearing voluntary departure potentially. . .
> affect[ed] the outcome of [his deportation] proceedings
> **because [the individual] might have applied for and received
> this relief <u>rather than conceding deportability, with its
> attendant harsh consequences</u>**. *Basulto-Pulido*, 219 Fed.Appx.
> at 719 unpublished, but citation permitted, see *supra*, citations

and internal quotation marks omitted, emphasis added.

Once an individual makes the above prima facie showing of prejudice, "the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003); see also *United States v. Arrieta*, 224 F.3d 1076, 1082-83 (9th Cir., 2000).

At the time of his October, 2002 hearing before the IJ, Mr. Fajardo-Hernandez was not among the two classes of individuals categorically barred from the relief of voluntary departure. He was neither involved in terrorism, nor convicted of an "aggravated felony."[1] See 8 U.S.C.A. § 1229c(a), as explained in *Ortiz-Lopez*, 385 F.3d at 1205. Additionally, Mr. Fajardo-Hernandez was a long-time resident of the United States with several members of his family residing in the United States including three daughters, a wife, his father, several aunts, uncles and cousins. These equities, despite his prior convictions, shifted the burden to the government. The government was represented at the hearing by INS attorney, Mr. Keller. Mr. Keller did not introduce any evidence on behalf of the government to rebut Mr. Fajardo-Hernandez' *prima facie* showing of plausibility.

It should be noted that the Ninth Circuit has characterized voluntary departure pursuant to section 1229c(a) as "fast-track" voluntary departure because the departure takes place before the completion of removal proceedings and requires a wholesale waiver of the person's due process rights. *Ortiz-Lopez,* 385 F.3d at 1204 n.1 ("[section 1229c(a)] was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA'), and permits 'fast-track' departure prior to the completion of removal proceedings"); *In re Cordova*, 22 I & N Dec.

---

[1] An "aggravated felony" is
> a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year.
> 8 U.S.C.A. § 1101(a)(43)(F).

The phrase, "term of imprisonment. . . refers to the **actual sentence imposed** in the earlier felony case, not the maximum available sentence." *U.S. v. Pimentel-Flores*, 339 F.3d 959, 962 (9th Cir., 2003), emphasis added, citing *Alberto-Gonzalez v. INS*, 215 F.3d 906, 909-910 (9th Cir., 2000). According to Exhibit Four, Mr. Fajardo-Hernandez had not served more than 123 days in jail for any conviction which preceded his deportation hearing of October 21, 2002.

966, 967-68 (BIA 1999) (additional requirements for a grant of fast-track voluntary departure include: 1) a request at or before initial master calendar hearing; 2) making no additional requests for relief; 3) conceding removability; and 4) waiver of appeal of all issues) (citing 8 C.F.R. § 240.26(b)(1)(I) (1998)).

An IJ's decision to grant a fast-track voluntary departure "expedites and reduces the cost of removal" for the government. *Lopez-Chavez v. Ashcroft,* 383 F.3d 650, 651 (7th Cir., 2004). Accordingly, an IJ has "broader authority to grant voluntary departure" under this section. *In re: Eloy Arguelles-Campos,* 22 I & N, Dec. 811, 817 (BIA 1999). In fact, an "[individual] need not show that he has good moral character or that he has the financial means to depart the United States." *Id.* Immigration Judges typically use this form of relief to "quickly and efficiently dispose of numerous cases on their docket." *Id;* cited by *U.S. v. Nungaray-Rubalcaba*, 229 Fed. Appx. 436, 438 (9th Cir., 2007), unpublished, but citation permitted per U.S. Ct. Of App. 9th Cir. Rules 32.1 and 36-3, 28 U.S.C.A. (Failure to inform person of his eligibility for a voluntary departure violated his due process rights, "and because this violation caused him prejudice, the underlying order of deportation cannot be used as an element of his conviction under § 1326."). Section 1229c(a) is quite similar to the pre-IIRIRA fast-track voluntary departure provision of 8 U.S.C. § 1252(b), which also provided for expedited voluntary departures for individuals who had not been convicted of aggravated felonies and who were not national security risks. See *United States v. Contreras-Aragon,* 852 F.2d 1088, 1094 (9th Cir. 1988) ("[Section 1252(b)] vests the Attorney General with discretion to award voluntary departure in lieu of *initiating* deportation proceedings.") (emphasis in original), overruled on other grounds by *Zazueta-Carrillo v. Ashcroft,* 322 F.3d 1166 (9th Cir., 2003).

The Ninth Circuit has characterized such fast-track departures as the "rough immigration equivalent of a guilty plea, in that the [individual] knowingly waives his rights to a hearing in exchange for the *certainty* of being able to depart voluntarily, rather than under an order of deportation." *Contreras-Aragon,* 852 F.2d at 1094 (emphasis added) (internal quotation omitted). Such a departure is "available to an [individual] who knowingly waives his right to a deportation hearing in exchange for a *guarantee* of being able to depart voluntarily." *Id.* (emphasis added).

The Ninth Circuit is not alone in observing that there is an overwhelming likelihood that an individual will receive a favorable exercise of an IJ's discretion under these circumstances. The U.S. Supreme Court has noted that "[a]rrested aliens are *almost always* offered the choice of departing the country voluntarily, 8 U.S.C. § 1252(b) . . . and as many as 98% of them take that course." *Reno v. Flores,* 507 U.S. 292, 307 (1993), emphasis added.

> [T]he Supreme Court has often emphasized, deportation is a drastic measure that may inflict 'the equivalent of banishment or exile,' and 'result in the loss of all that makes life worth living.' When such serious injury may be caused by INS decisions, its officials must be held to the highest standards in the diligent performance of their duties. *Sun Il Yoo v. INS*, 534 F.2d 1325, 1329 (9th Cir., 1976) (citations omitted).

In summary, Mr. Fajardo-Hernandez would have likely received discretionary relief had he been advised of his eligibility for a fast-track voluntary departure. At a minimum, the government failed to prove that Mr. Fajardo-Hernandez had no *plausible* claim that the outcome of the removal proceeding *could* have been different. Accordingly, Mr. Fajardo-Hernandez was prejudiced by the due process violation and this Court should dismiss the indictment.

**A.    BECAUSE THE OCTOBER 21, 2002 HEARING VIOLATED MR. FAJARDO-HERNANDEZ' RIGHT TO DUE PROCESS, THE GOVERNMENT IS PRECLUDED FROM USING ANY REMOVAL WHOSE LEGAL AUTHORITY WAS DERIVED FROM THOSE PROCEEDINGS AS AN ELEMENT OF A SECTION 1326 CHARGE**

A defendant charged with illegal reentry after removal under 8 U.S.C. § 1326 may collaterally attack a removal order. A deportation order arising out of a fundamentally flawed proceeding can not serve as a predicate for a subsequent prosecution under 8 U.S.C. 1326. *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

Mr. Fajardo-Hernandez' A-File contains four "Notice[s] of Intent/Decision[s] to Reinstate Prior (Removal) Order." (See Exhibit Six). The notices are dated April 11, 2007; June 2, 2004; May 6, 2003; and November 28, 2003. Each notice states,

> 1.    You are an alien subject to a prior [or previous] order of deportation / exclusion / removal entered on   October 21, 2002    at   San Diego, CA

For the reasons stated earlier ("Section II," *supra*), the October 21, 2002 Order of Removal violated Mr. Fajardo-Hernandez' right to due process. Just as a deportation order arising out of a fundamentally flawed proceeding can not serve as a predicate for a 1326 prosecution, merely reinstating the original order does not cure the constitutional violation.

## CONCLUSION

The case against Mr. Fajardo-Hernandez should be dismissed because (1) the indictment is defective on its face; and (2) Mr. Fajardo-Hernandez' due process rights were violated on October 21, 2002 when the IJ failed to inform him of his apparent eligibility to apply for pre-hearing voluntary departure, thereby prejudicing him. The Order of Removal and any subsequent reinstatements based on that Order may not serve as a predicate for a 8 U.S.C. 1326 prosecution.

Dated: April 14, 2008                                    Respectfully submitted,

                                                          */s/ John Fielding*

                                                          John R. Fielding, Jr.
                                                          Attorney for Defendant,
                                                          jfieldingattyatlaw@yahoo.com